The court will proceed to the next case, Odei v. Department of Homeland Security. Mr. Pollack. Good morning, and may it please the court, my name is Scott Pollack. I represent the plaintiffs in this action, Pastor Ernest Odei, and the Spirit of Grace Outreach from Springfield, Illinois. This case is about a pastor from Ghana who came to the United States using a validly issued visitor visa. He was stopped and not allowed entry into the United States despite having the visa. The question before this court is subject matter jurisdiction, whether the Immigration and Nationality Act contains provisions that would preclude a court from reviewing his sole claim in this action, which is whether the decision of inadmissibility by the Customs and Border Protection Agency was properly made or not. The district court judge determined that because he was found inadmissible, she had no jurisdiction to review that decision. She referred to sections of the Immigration and Nationality Act, all of which refer to expedited removal orders. Section 1252A2B refers to no court shall have jurisdiction to review an expedited removal order. A related section later in that same statute, Section 1252A2E, talks about not being able to enjoin or provide any kind of equitable relief over claims arising from, or pertaining to, rather, expedited removal orders. In this case, there is no expedited removal order, and the reference of those statutes to the expedited removal process makes clear that there is no review, certainly over expedited removal orders. This court determined that very clearly in the Kahn decision. But the process that occurred at O'Hare Airport in May of 2017 did not result in an expedited removal order. Rather, the agency allowed Pastor Ernest O'Day to withdraw his application for admission to the United States. That was a discretionary decision by the agency. It was authorized by statute, not under the expedited removal provisions, but rather under a preceding provision at 1252A4, I'm sorry, A2A4. And therefore, the court should have found that because there was no order of removal, that there was jurisdiction to decide the matter of admissibility. This court has already decided that there is jurisdiction in this kind of case where someone is allowed to withdraw their application for admission. It's the Matushkina case that we've included in our brief, and the government looks at that case differently. It's a little complicated, but basically, the court found that there was standing in that case, that the plaintiff was harmed by a finding of inadmissibility and by the cancellation of her visa. That's the same thing that happened to Pastor O'Day. And therefore, even though the district court didn't really address standing in her decision, the government has raised it on appeal, and we just wanted to make the point that Pastor O'Day was harmed by the inadmissibility finding. The other plaintiff in the action, the religious organization, was also harmed by the inadmissibility finding because they had an interest in his admissibility to the United States as well. We don't have really many other issues other than the standard of review based on the somewhat rare distinction that Pastor O'Day was coming here to perform activities that were consistent with and in furtherance of his religious vocation. That raises, in our view, a distinction from all of the other cases that are pertinent in this area, and under the Religious Freedom Restoration Act, we think it mandates a different and more searching review of whether the CBP's inadmissibility finding was correct or not. We've argued in our briefs that either this court or on remand to the district court that strict scrutiny should be applied because of the religious interests and the burden that the agency placed on those religious interests for both plaintiffs. So why is it under the INA a ruling on admissibility, in other words a ruling that the alien is inadmissible, which is I think what you're seeking review of, right? Yes, that is exactly what we're seeking. It is not an order of removal for purposes of the jurisdiction stripping provision. What statute says that? Well, there is basically a separate statute that was discussed in the case that we brought to the court's attention several days ago, the Atanakovich case out of the Western District of New York. Basically a finding of inadmissibility does not have to relate to a order of removal. There simply was no order of removal entered. But the INA defines an order of deportation. That's the alternate word for removal. It includes a decision ordering deportation and also an order concluding that the alien is deportable. That's the inadmissibility decision that you're seeking review of. Right, but there is no order of inadmissibility. There is a finding that the person is inadmissible in the question. But that's what you're asking us to review. Yes, that's correct. It falls within the category of orders of removal that we don't have jurisdiction to review. Right, so the decision I mentioned does talk about a separate statute. It's 8 U.S.C. Section 1201H that refers to people who have been granted visas to come to the U.S. Essentially it says there's no right to enter the United States, but if a person is found to be inadmissible, basically the court has jurisdiction to determine whether inadmissibility was properly made as a predicate decision to entry of an order of removal. How is that not just an end run around the jurisdiction-stripping provision? Well, it's not... To parse things that finely. Well, I don't think that this court's decision in Modishkina could have been made if there was no jurisdiction over a finding of inadmissibility. It didn't happen there. It didn't happen here. And these statutes simply don't apply. I'm puzzled by that argument. The panel in Modishkina, if that's the right pronunciation, was quite explicit that it held one thing that the plaintiff had standing. It didn't say that anything was judicially reviewable. In fact, the next thing it said is visa decisions are not reviewable. Plaintiff loses, right? So no one is questioning your client's standing, but there is a problem with your client having left the United States voluntarily, attempting to get review of a visa decision. I mean, that's incompatible with that particular case and with quite a few other decisions. How can your client get review of a visa decision? Well, I have to disagree with how you've just explained that. Don't disagree with my reading of Seventh Circuit cases. Answer my question. All right. Modishkina relied on the doctrine of consular non-reviewability and found in that case that the plaintiff was precluded on the merits by that doctrine, that she was actually asking the court to review a consular decision. Our case is very different. There is no consular decision other than the one to previously grant Pastor O'Day his visa. So that is the distinction between Modishkina and this case. And the obstacle to Modishkina getting review is not present in Pastor O'Day's case. We also just very briefly do make the argument in our briefs that even if the district court judge is upheld on jurisdiction, that RFRA should provide relief as well. All right. Thank you. Mr. Oswald. Good morning, Your Honors. Counsel, may it please the court. That's essential. Our essential argument here is that this was an attempt to run around the non-expedited removal, that there is no expedited removal under the Kahn case. That was the point of Modishkina in terms of what the way that we argued this was, that this is essentially trying to, he didn't challenge it, and he's, counsel has said we understand under Kahn it's not removable. So they didn't challenge it when they were here, waited until Pastor O'Day returned to Ghana, and then he's attempting to challenge that decision here, and that's the inadmissibility finding, which clearly is the heart of it. The way that he's, that has been done here is, that they're looking at this, is to say that because immigration exercises discretion and cut him a break, if they find, if immigration would find that he was, and they did find that he was subject to expedited removal, and they actually remove him, he's subject to a five-year bar. He could not come back for five years without a waiver. That was, that's a very harsh result. Kahn talks about this. This court I don't think was exactly thrilled maybe with the expedited removal procedure that's set forth, but it said that's not our job is to review these decisions. So in that case they said, you know, there are flaws with this, but we will, we understand. There's a lot of visitors that come to the United States. O'Hare Airport has 7 billion travelers a year. We are, they're making a volume of decisions. They're looking at this. These people are our gatekeepers. We're not going to review these decisions. And the way that you ameliorate that process is with this withdrawal of admission, where you withdraw your application for admission so that they, immigration officers have the discretion to say, we're not going to subject this person to a removal order. We're not going to bar them for five years. We don't think that that's kind of a harsh result. We're going to let them go back. And because that's not necessarily an expedited removal order, counsel's arguing that they're entitled to review that finding that would have resulted in an order had the officers not exercised discretion. In this case, there being, it would be as if, if they exercised the expedited removal order under Conn, clearly there's no review. If they give them a break and they cut them a break and let them go back. Clearly there's no review. You are aware, I hope, that the Ninth Circuit has just held that statute unconstitutional. The word clearly doesn't apply when something like that has happened. Right, Your Honor. And obviously I'm relying upon this court's ruling in Conn and the way that this has been applied and the way it was applied in this case. I don't think that in this case, how did we get here? You have Pastor O'Day coming to the airport. We obviously don't have to decide that question, whether there has been a suspension of the writ of habeas corpus, because the plaintiff left voluntarily. I'm just concerned about saying, oh, well, this is all clear, when given a decision, given the Ninth Circuit's decision, it's anything but clear. On the expedited removal, Your Honor, I understand that the Ninth Circuit just ruled on that, and I'm relying upon this court's ruling in Conn, which did approve the expedited removal. And in this case, even if one looks at this, Pastor O'Day was asked questions at the airport. He came up with, and they explained, he comes in with a B-1, B-2 visa. That gets you in as either a visitor just to go to Disneyland or something like that, or it gets you in for business purposes, as long as you're not being paid here. Someone who is a minister would qualify as a business visitor under the B-1 standard. If they had a church, for example, that was going to, they sponsored them in Ghana, or there's a specific church that sponsored them here, or all that. He came up with a letter, which is cited in their brief, and that didn't even, we talk about Sogo as being a plaintiff. The letter that he came up was from Ms. Heaton, who is the head, apparently, of Sogo. Wasn't on any Sogo letterhead. He didn't tell them anything about any of that. And it was all that he was going to be a volunteer missionary and he was going to come in and he was going to minister at the church. All those things are completely fine, except that he had no church, when he was questioned, there was no specific church that was identified there, no specific church here, and that's why they made the conclusion that he didn't fit the requirements. And that's why they led him to that decision, and that's why he was found to be inadmissible. He now comes back, in terms of this case, and he has not done, I mean, there's nothing specific even here in terms of what he's done. He got a visitor visa that allowed him to come into the United States for a five-year period of time. That would have expired by the passage of time, and he hasn't sought to get a visa to even come with that. That's our point of there's no live case or controversy here. There's nothing here that he can specifically point to in terms of when he wants to make a visit or that he's even in the position to do that. A visa is issued by the Department of State. It's not issued by USCIS or the CBP, who was the agency that did this. In this case, Judge Wood looked at this situation, said this is essentially the same thing in terms of this finding of inadmissibility. It's not something that I can review, and it's not something that we think this court should review either. In this case, if there's nothing further, I will sit down. Thank you, Mr. Oswald. Mr. Pollack, your time has expired, but you may have an additional minute. Thank you. I'll be brief. We're really just relying on the language of the statute itself. We're not trying to make fine distinctions between findings of inadmissibility and expedited removal orders, but the statute in our reading is quite clear that for this court to not have jurisdiction, there must be an order of removal that was entered. That was the ruling of the court in the Western District of New York, and we derive from the Matushkina case that it would be the same if that was presented to the court, which, of course, it now is. So that's all. We don't disagree that CBP has a very serious job to do, but this was not the kind of case that should have raised concerns to them. The real reason that they gave in their record of inadmissible alien was not that he wasn't sponsored by a church formally, but rather that he spent four or five months a year here doing his religious activities, and he should have been here on a student visa. We disagree with that, but all of these are not jurisdictional arguments. They should be considered by the judge on the merits. Thank you, Mr. Pollack. Mr. Oswald, thank you. The case is taken under advisement. The court will proceed to adjournment.